UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IFRANALI BABUHAI DHUKA, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | SA-26-CV-2050-FB (HJB) |
| | § | |
| MARKWAYNE MULLIN, Secretary, | § | |
| U.S. Department of Homeland Security; | § | |
| TODD LYONS, Acting Director, U.S. | § | |
| Immigration and Customs Enforcement | § | |
| (ICE); MARCOS CHARLES, Acting | § | |
| Executive Associate Director, ICE and | § | |
| Removal Operations; TODD BLANCHE, | § | |
| Acting United States Attorney General,[1] | § | |
| and WARDEN, SOUTH TEXAS | § | |
| DETENTION FACILITY, | § | |
| | § | |
| Respondents. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Ifranali Babuhai Dhuka's Petition

for Writ of Habeas Corpus (Docket Entry 1), which was referred to the undersigned pursuant to 28

U.S.C. § 636(b)(1) (*see* Docket Entry 8).  For the reasons set out below, I recommend that the

petition be **GRANTED IN PART** and **DENIED IN PART**,[2]  and that Petitioner be released from

Respondents' custody.

---

[1] Todd Blanche was appointed acting Attorney General on April 2, 2026. Blanche is therefore substituted for former Attorney General Pamela Bondi as the proper, named Respondent. *See* FED. R. CIV. P. 25(d).

[2] The Petition should be denied in part because Petitioner seeks an award of attorney's fees and costs, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*See* Docket Entry 1, at 9). The Fifth Circuit has unequivocally stated that the EAJA "does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F. 4th 782, 785 (5th Cir. 2023),

## I.      Jurisdiction.

The Court has jurisdiction to consider the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.   *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued custody after a deportation order ha[s] become final.") (emphasis omitted).   The undersigned has authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II.      Background.

The facts in this case are largely undisputed.   Petitioner is a citizen of Pakistan who entered the United States without inspection on February 26, 1986.   (Docket Entry 1-2, at 1; Docket Entry 6-1, at 1.)   After living in the United States for 14 years, Petitioner was encountered by immigration officials on July 13, 2000, at which time he was issued a Notice to Appear ("NTA"), charging him with being removable pursuant to 8 U.S.C. § 1186(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled.   (Docket Entry 1-2, at 1.)

At some time after receiving the NTA, Petitioner filed an application for voluntary departure, which an Immigration Judge ("IJ") granted on October 11, 2002.   (Docket Entry 1-3, at 1.)   The IJ ordered Petitioner to voluntarily depart by November 12, 2002—within 30 days of

---

*cert. denied*, 144 S. Ct. 553 (2024). Following *Barco*, district courts have unvaryingly denied similar attorney's fee requests. *See, e.g.*, *Pozo v. Bondi*, --- F. Supp. 3d ---, No. SA-26-CA-547-XR, 2026 WL 752628, at *15 (W.D. Tex. Mar. 12, 2026) ("[F]ees under the EAJA are not available in habeas corpus proceedings."); *Hernandez v. De Anda-Ybarra*, No. EP-26-CV-318-KC, 2026 WL 560334, at *1 (W.D. Tex. Feb. 25, 2026) ("[S]uccessful immigration habeas petitioners are not entitled to attorneys' fees under the EAJA."); *Bobomirzaev v. Bondi*, No. 5:25-CV-297, 2026 WL 972331, at *4 (S.D. Tex. Jan. 23, 2026) ("[F]ees under the EAJA are not authorized for [§] 2241 habeas petitions."); *Gomez-Simeon v. Bondi*, No. SA-25-CV-1460-JKP, 2025 WL 3470872, at *5 (W.D. Tex. Nov. 24, 2025) ("[A]ttorney fees under the EAJA are not available in habeas corpus proceedings.").

2

the order—and alternatively ordered that he be removed involuntarily to Pakistan should he fail to self-depart. (*Id.*) Petitioner failed to depart, but he later filed another application for voluntary departure before a second IJ. (*See* Docket Entry 1-4, at 2.) The second IJ apparently issued an order denying the application, which Petitioner appealed to the Board of Immigration Appeals ("BIA"). (*Id.*) On March 8, 2004, the BIA sided with Petitioner and ordered that he "voluntarily depart from the United States . . . within 30 days"—*i.e.*, by April 7, 2004. (*Id.* at 3.) The BIA's order further provided that, should Petitioner fail to voluntarily depart by that date, he "shall be removed" and "shall be ineligible for a period of 10 years for any further relief." (*Id.*)

Petitioner did not voluntarily depart as ordered; he continued to live in the United States for another 20 years. On September 22, 2025, immigration officials again encountered Petitioner, following a traffic stop. (Docket Entry 6-1, at 2.) It appears that he was taken into custody at that time. (Docket Entry 1, at 2.) About a month later, on October 29, 2025, Petitioner filed a motion to reopen his immigration proceedings with the BIA. (Docket Entry 6-1, at 2.) That motion remains pending. (*Id.*; Docket Entry 11, at 1.)

Petitioner filed the instant petition on March 27, 2026. (Docket Entry 1.) Respondents have filed a response (Docket Entry 6), to which Petitioner has replied (Docket Entry 7).

## III.  Discussion.

Although he has asked the BIA to reopen his immigration proceedings, Petitioner does not challenge his removal before this Court. Instead he argues that his detention violates both 8 U.S.C. § 1231 and his Fifth Amendment right to due process because he has been detained for over six months following his arrest on September 22, 2025, without a significant likelihood of removal in the reasonably foreseeable future. (Docket Entry 1, at 2.)

3

"Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'"  *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. 1231(a)(1)(A)).  During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)).  After 90 days, however, detention is no longer mandatory; instead "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision."  *Abuelhawa v. Noem*, No. 4:25-cv-4128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231).

Although the statute does not specify a time limit on how long DHS may continue to detain an alien in the post-removal period, the Supreme Court has held that post-removal-period detention may last no longer than is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689.  Recognizing that not all removals can be accomplished within 90 days, the Supreme Court concluded that the Government is presumptively entitled to an additional 90 days to finish the job.  *See id.* at 701.  Accordingly, post-removal-order detentions are "presumptively reasonable" for up to "six months."  *Id.* at 701; *see Mogos v. Thompson*, No. 5:26-CV-740-JKP, 2026 WL 475079, at *3 (W.D. Tex. Feb. 13, 2026) ("Th[e] six-month period includes the 90-day removal period.").  Once an alien subject to a final order of removal has been detained for six months, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future."  *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

To state a *Zadvydas* claim, Petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.  This is a "modest standard."  *Mogos*, 2026 WL 475079, at *4.  It does not require that Petitioner "rule out 'any prospect of removal—no matter how unlikely or unforeseeable.'"  *Id.* (quoting *Zadvydas*, 533 U.S. at 702).  If Petitioner provides a good reason to doubt that he will be

4

removed anytime soon, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "This is a fact-intensive inquiry in which the likelihood of release in the foreseeable future shrinks as the post-removal period grows." *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (citing *Zadvydas*, 533 U.S. at 701).

In this case, the parties do not dispute that Petitioner has been detained under § 1231, pursuant to a final order of removal, for more than six months. Instead, the parties dispute whether each side met their respective burdens regarding the likelihood of Petitioner's removal in the reasonably foreseeable future.

Petitioner has presented good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. He points out that, despite his being detained for over six months, "Respondents have failed to secure travel documents" necessary to make his removal possible, let alone likely. (Docket Entry 1, at 8.) Additionally, Respondents waited for two months before even requesting the requisite travel documents. (Docket Entry 7, at 5.) These undisputed facts easily meet the modest "good reason" standard.

The burden therefore shifts to Respondents, whose sole argument is that they have requested the necessary travel documents. (Docket Entry 6-1, at 2.) As recently as May 7, 2026, Respondents confirmed that ICE is still waiting for those documents. (Docket Entry 11, at 1.) Under the *Zadvydas* standard, Respondents cannot meet their burden based on "a pending request for travel documents, alone." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025); *see Medellin Martinez v. Bondi*, No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025) (same). The mere "potential for a travel document at some point in the future is

not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-cv-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted).

Accordingly, Petitioner has sufficiently established that removal is not significantly likely in the reasonably foreseeable future; he should be released from Respondents' custody pursuant to § 1231 and *Zadvydas*.[3]

### IV.    Conclusion and Recommendation.

Based on the foregoing, I recommend that Petitioner's Ifranali Babuhai Dhuka's Petition for Writ of Habeas Corpus (Docket Entry 1) be **GRANTED IN PART**, and that Petitioner be ordered **RELEASED WITHIN 48 HOURS** of the Court's order, under an order of supervision. As previously noted, *see* n. 1 *supra*, I recommend the petition be **DENIED IN PART** to the extent that it seeks attorney's fees and costs under the EAJA.

### V.    Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.    Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

---

[3] Although Petitioner also claims his detention violates the Fifth Amendment right to due process (Docket Entry 1, at 2), all of Petitioner's arguments rely exclusively on *Zadvydas*—a case where the Supreme Court used the constitutional avoidance canon to construe § 1231 as containing an implicit time limit on post-removal-order detentions. *See* 533 U.S. at 689 ("[Section 1231], read in light of the Constitution's demands, limits an alien's post-removal-period detention."). Thus, the Court should construe the petition as advancing a single claim under § 1231 and *Zadvydas*.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.   An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; frivolous, conclusory, or general objections may be disregarded.   *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.   *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).   Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court.   *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 21, 2026.

Henry J. Bemporad
United States Magistrate Judge